# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELISSA S. GRANT, | Case No. 24- |
| Representative Plaintiff, | |
| v. | CLASS ACTION |
| CAPITAL ONE AUTO FINANCE, INC. a division of CAPITAL ONE, NATIONAL ASSOCIATION, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

The Representative Plaintiff, Melissa S. Grant (the "*Plaintiff*"), brings this action on behalf of herself and all other persons similarly situated against the Defendant, Capital One Auto Finance Inc., a division of Capital One, National Association (the "*Defendant*") and, in support thereof, alleges as follows:

1. Because repossession effects an immediate seizure of a consumer's vehicle without any legal process or judicial oversight, the Uniform Commercial Code (the "*UCC*") requires strict compliance with the laws governing the repossession and disposition of a vehicle following repossession.

2. Failure to provide proper notice of disposition of repossessed consumer goods is a violation of the UCC that entitles aggrieved borrowers to recover uniform statutory damages.

3. The Defendant routinely finances loans for consumer vehicle purchases, either by making direct loans to residents, or by accepting assignment of retail installment sales agreements between consumer borrowers and automobile dealerships.

4. In its ordinary course of business, the Defendant has systematically failed to provide statutorily sufficient notice to its borrowers of their rights post-repossession.

## PARTIES

5. The Plaintiff, Melissa S. Grant, is a natural person, residing at 707 Ledlie Street, Pittsburgh, Pennsylvania 15219.

6. The Defendant, Capital One Auto Finance, Inc., is a division of Capital One, National Association, which is a successor in interest to Onyx Acceptance Corporation and NFB Funding. Capital One Auto Finance is also a fictitious name registered in Pennsylvania by Capital One, National Association. The Defendant is headquartered in Texas with an address at 7933 Preston Road, Plano, TX 75024.

7. The Defendant regularly and systemically conducts business throughout Pennsylvania.

## STATEMENT OF FACTS AND LAW

**A. The Financing Agreement**

8. On April 13, 2015, the Plaintiff purchased a 2015 Dodge Charger (the "*Vehicle*") from Monroeville Dodge in Monroeville, Pennsylvania.

9. In connection with that purchase, the Plaintiff entered into a Retail Purchase Agreement under which Monroeville Dodge for her purchase of the Vehicle. A copy of the Agreement is attached as *Exhibit 1*.

10. Upon information and belief, on April 13, 2015, the Plaintiff entered into a retail installment sales contract with Monroeville Dodge to finance her purchase of the Vehicle (the "*Financing Agreement*").

2

11. The Plaintiff purchased the Vehicle primarily for consumer use, and the Financing Agreement is a "consumer credit contract." *See Exh*. 1, p. 2.

12. Upon information and belief, Monroeville Dodge immediately assigned the Financing Agreement to the Defendant for value.

13. Thus, the Defendant became the creditor and secured party under the Financing Agreement.

**B. Governing Law**

14. Pennsylvania's enactment of the UCC is codified at 13 Pa. C.S. §§ 1101, *et seq*.

15. The provisions of sections 9601-9624 of the UCC apply in cases where a secured creditor has repossessed and resold a vehicle following a borrower's default.

16. UCC section 9610 requires, *inter alia*, that "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable." 13 Pa. C.S. § 9610(b).

17. Under the UCC, the Defendant is required to provide written "explanation" of its disposition of the vehicles it repossessed from its consumer borrowers, including an explanation of its calculation and the amount of any surplus or deficiency, indicating whether certain future adjustments might affect its calculation, and providing contact information from which additional information regarding the transaction is available. 13 Pa. C.S. § 9616(b).

18. And the UCC imposes an express and unambiguous requirements for the content and structure for its legally mandated post-sale explanations:

> ***Required information.*** — To comply with paragraph (2) of the definition of the term "explanation" in subsection (a), a writing **<u>must</u>** provide the following information **<u>in the following order</u>**:
> **(1)** The aggregate amount of obligations secured by the security interest under which the disposition was made and, if the amount reflects a rebate of unearned interest or credit service charge, an indication of that fact, calculated as of a specified

3

date…

    **(2)** The amount of proceeds of the disposition.

    **(3)** The aggregate amount of the obligations after deducting the amount of proceeds.

    **(4)** The amount, in the aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing and disposing of the collateral and attorney fees secured by the collateral which are known to the secured party and relate to the current disposition.

    **(5)** The amount, in the aggregate or by type and types of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled and which are not reflected in the amount in paragraph (1).

    **(6)** The amount of the surplus or deficiency.

13 Pa. C.S. § 9616(c) (emphasis added).

    19.    If a secured party fails to comply with the provisions governing the repossession and subsequent disposition of consumer goods, UCC section 9625(c)(2) provides that consumer debtors such as the Plaintiff and those similarly situated are entitled to recover minimum damages of not less than the amount of the total finance charges plus 10 percent (10%) of the principal amount borrowed.

    20.    As an official comment to section 9625 explains in plain English, the section is designed to make a creditor liable for its noncompliance, regardless of any injury that may have resulted:

> **Minimum Damages in Consumer-Goods Transactions.** Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned after former Section 9-507(1) and is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted. Subsection (c)(2) leaves the treatment of statutory damages as it was under former Article 9.

U.C.C. § 9-625, cmt. 4 (Am. Law Inst. & Unif. Law Comm'n 2024).

21. In addition to the formula for statutory damages under 9625(c), because of the heightened need for strict compliance with the statutory requirements for post-sale explanations in consumer goods transactions, consumer borrowers are entitled to recover an additional $500 from a secured party failing to send a compliant explanation of a deficiency when that noncompliance was part of a pattern or consistent with a practice of noncompliance. 13 Pa. C.S.A. § 9625(e)(5).

**C. The Repossession**

22. In July of 2020, the Defendant repossessed the Plaintiff's Vehicle, claiming a default in connection with the Financing Agreement.

23. On July 16, 2020, the Defendant issued a correspondence to the Plaintiff, bearing the headings, "Notice of Our Plan to Sell Property" and "Notice of Repossession & Notice of Right to Reinstate or Redeem."

**D. The Defendant's Improper Disposition Notice Violates the UCC**

24. On September 24, 2020, the Defendant sent a document titled "Explanation of Calculation of Deficiency" (the "***Disposition Notice***"), in an apparent effort to comply with its statutorily prescribed obligation to supply an explanation for how the Defendant calculated the Plaintiff's alleged deficiency balance. A copy of the Disposition Notice is attached as Exhibit 2.

25. The Disposition Notice that the Defendant issued to the Plaintiff did not comply with the strict requirements for such explanatory notices in the context of a consumer goods transaction, under the unambiguous language of the UCC.

26. As set forth, *supra*, the Defendant was required to send a statutorily prescribed "explanation" of its disposition sale to the Plaintiff and to those similarly situated.

27. The Defendant's explanation of calculation of deficiency on the Disposition Notice is defective in several respects.

28. First, the Disposition Notice omitted entirely one of only six items of information, enumerated under the heading "**Required information**." 13 Pa. C.S. § 9616(c) (emphasis in original). Specifically, the Disposition Notice failed to provide "the aggregate amount of the obligations after deducting the amount of proceeds." 13 Pa. C.S. § 9616(c)(3). Consequently, the Disposition Notice failed to meet the requirements of the UCC, as a matter of law. Exh. 2, p.1.

29. Second, the Defendant failed to comply with the requirement that it disclose the aggregate amount of the obligations secured the security interest pursuant to which the disposition was made. 13 Pa. C.S. § 9616(c)(1). Instead, it provided a loan balance that it impermissibly buried toward the end of its disclosures with a footnote indicated with the symbols "**". *Id.*

30. Third, the Defendant failed to disclose the statutorily enumerated requirements in the order that they appear in the UCC, as required under 13 Pa. C.S. § 9616(c). For instance, the Defendant unlawfully inserting an "Account Adjustment" to the loan balance on line 10—when this information had been required to disclose first, with the loan balance presented on line 1. *Id.*

31. Fourth, the Defendant failed to disclose the credits to the Plaintiff was known to have been entitled, including the refund of the unused portion of the Plaintiff's service contract, as required under 13 Pa. C.S. § 9616(c)(5). *Id.*; Exh. 1, p.1 (purchase of $2,000 service contract).

32. Fifth, the Defendant violated section 9616(c)(6) by failing to disclose the amount of any surplus or deficiency. While the Defendant reported that a deficiency of $1,602.66, it expressly admitted that "…refunds of Insurance Premiums, Service Contract, and/or GAP may affect the amount of the deficiency/surplus." Exh. 2, p.1. And, as the

6

Defendant had to have known, the Plaintiff was entitled to a refund of the unused portion of her $2,000 credit service charge. Exh. 1, p.1.

33. The Defendant's violations of section 9616(c) are summarized on the table below:

**ANALYSIS OF "REQUIRED INFORMATION"**

| *Ordinal, Enumerated Requirements under 13 Pa. C.S. § 9616(c)* | *Defendant's Violations of 13 Pa. C.S. § 9616(c)* |
|---|---|
| Section 9616(c)(1) – aggregate amount of secured obligations; | **Violated**. The Defendant supplied a loan balance on line 1, only to upwardly adjust that loan balance on line 10:<br><br>Loan Balance as of Repo Date 07/13/20 ················· $15,793.67<br>…<br>…<br>…Account Adjustments** ················· $12.84<br><br>…**These may include the following adjustments made post repossession: accrued interest, payments, returned payments, late payment fees, and/or insufficient fund fees.<br><br>Exh. 2, p.1. This violates the requirement of section 9616(c) that the enumerated information be provided in the prescribed order (since loan balance information belongs in item 1, while disposition expenses belong in item 4); and the requirement of subsection (c)(1) to disclose the aggregate amount of obligations secured by security interest under which the disposition was made. |
| Section 9616(c)(2) – proceeds of disposition; | Satisfied.<br><br>Proceeds from Sale of Collateral ········ $14,400.00<br><br>*Id.* |
| Section 9616(c)(3) – aggregate amount of the obligations after deducting the amount of proceeds; | **Violated**. This required information is omitted entirely. *Id.* |
| Section 9616(c)(4) – amount(s) of expenses of disposition; | Satisfied. |

7

| | |
|---|---|
| | Costs Associated with Repossessing the Vehicle ............ $14,400.00<br>Sale Cost ............................................. $55.00<br>Transportation ................................. $250.00<br>Vehicle Inspection ............................ $50.00<br>Cost of Reconditioning ..................... $29.00<br><br>*Id.* |
| Section 9616(c)(5) – additional credit entitlements | **Violated**. The Disposition Notice lists the following "goodwill" credits, without disclosing the credits to which the Plaintiff is known to be entitled.<br><br>    Goodwill Waiver of Unpaid Interest ................................. $50.00<br>    Goodwill Waiver of Costs Associated with Repossessing Vehicle ..................... $29.00<br><br>*Id.* In fact, after the Defendant's failed effort to supply the "required information," it admitted that it failed to meet the requirement of section 9616(c)(5).<br><br>    Future… credits and refunds of Insurance Premiums, Service Contract, and/or GAP may affect the amount of the deficiency/surplus.<br><br>*Id.* And the Plaintiff would certainly have been entitled to a credit, which the Defendant failed to disclose considering that the Plaintiff purchased a service contract for $2,000. Exh. 1, p.1. |
| Section 9616(c)(6) – amount of the surplus or deficiency | **Violated**. The Defendant concluded its section 9616(c) table with the following line item:<br><br>    **The Amount of the Deficiency as of 09/24/20** ................................ $1,602.66<br><br>Exh. 2, p.1. However, the Defendant expressly acknowledged that<br><br>    Future expenses, charges, additional credits and refunds of Insurance Premiums, Service Contract, and/or GAP may affect the amount of the deficiency/surplus.<br><br>*Id.* As we know, the Plaintiff had been entitled to a refund of the unused portion of her $2,000 service contract. Exh. 1, p.1. |

8

34. The Deficiency Notice that the Defendant sent to the Plaintiff is evidently a form that it has issued to its other borrowers who are similarly situated to the Plaintiff. *Exh. 2* (identifier on lower left, as form "Deficiency_Balance_Gen_600").

35. The Defendant regularly employed the use of its form "Deficiency_Balance_Gen_600," and that form failed to provide an entry to meet the statutory requirement of providing the aggregate amount of the obligations after deducting the amount of proceeds. Consequently, the Defendant's failure to comply with section 9616(b)(1) of the UCC is part of a pattern or consistent with a practice of noncompliance.

36. Likewise, the design of Defendant's form "Deficiency_Balance_Gen_600" failed to provide information in compliance the order of presentation requirement imposed under the UCC. Consequently, the Defendant's failure to comply with section 9616(b)(1) of the UCC is part of a pattern or consistent with a practice of noncompliance.

37. The Disposition Notice is defective under the statute, and part of a pattern or practice engaged in by the Defendant, and commercially unreasonable, *per se*.

## DAMAGES

38. Based on the foregoing, the Plaintiff and those similarly situated are entitled to recover statutory damages for the Defendant's "failure in any event an amount not less than the credit service charge plus 10% of the principal amount of the obligation." 13 Pa. C.S. § 9625(c)(2).

39. In addition to damages under section 9625(c)(2), the Plaintiff and each similarly situated borrower are entitled to recover $500 from the Defendant since its failure to comply with section 9616(b)(1) was part of a pattern and consistent with its practice of noncompliance. 13 Pa. C.S. § 9625(e)(5).

40. Moreover, this Court is authorized to grant injunctive relief upon its determination that the Defendant is not proceeding in accordance with Article 9 of the UCC. 13 Pa. C.S. § 9625(a).

## CLASS ALLEGATIONS

41. The Plaintiff brings this action on behalf of themselves, and those persons similarly situated, to remedy the Defendant's ongoing unlawful practices in repossessing and disposing of motor vehicles and to seek redress on behalf of all such persons who have been harmed by the Defendant's actions. For purposes of this action, the Class represented by the Plaintiffs (the "***Class***"), shall consist of:

    a. all borrowers who purchased a vehicle pursuant to a retail installment sales contract for the purchase of a motor vehicle in a consumer goods transaction, under which the Defendant became the secured party;

    b. who within six years prior to the filing of this action through the date of class certification, had their vehicle(s) repossessed by the Defendant; and

    c. to whom the Defendant issued explanations regarding the disposition by the Defendant or its agents of their vehicles which notice:

        i. failed to provide the aggregate amount of the obligations after deducting the amount of proceeds, as mandated under 13 Pa. C.S.A. § 9616(c)(3); or

        ii. failed to provide the items of required information in the order enumerated in section 9616(c) of the UCC, as mandated under 13 Pa. C.S.A. § 9616(c).

42. The number of members of the putative class is such that joinder of all members is impractical.

43. The claims of the Plaintiff are typical of those of other members of the putative Class, and all are based on common factual and legal predicates. All Class putative members

financed automobiles through the Defendant and pledged their vehicle as collateral. For all putative Class members, the Defendant (i) claimed that each had been in default of the provisions of their retail installment sales contracts; (ii) repossessed the vehicles it had financed from each; (iii) disposed of those vehicles; and then (iv) issued explanations of such disposition transactions that fell short of the express requirements of the UCC.

44. The representative Plaintiff and her counsel will fairly and adequately protect the interests of the class. The Plaintiff is committed to fulfilling her obligations as a representative of the putative Class, and she represented by counsel competent and experienced in both consumer protection matters and class action litigation.

45. Questions of law or fact common to members of the putative Class predominate over any questions affecting only the Plaintiff. As pleaded, *supra*, the Defendant sent substantially similar "form" explanations to all members of the putative Class, and as with the Disposition Notice it sent to the Plaintiff, those explanations were part of its pattern and consistent with its practice of noncompliance.

46. In each case, the Defendant failed to follow the order by which various costs are proceeds must be listed, and to provide "the aggregate amount of the obligations after deducting the amount of proceeds in violation of section 9616(c) of the UCC.

47. The Plaintiff's claims are typical of those of the class they seek to represent, and the Plaintiffs will fairly and adequately represent the interests of the Class.

48. A class action is superior to other methods for the fair and efficient administration of this action. Because the damages suffered by individual class members may be relatively small compared to the expense and burden of litigation, it would be impracticable and economically unfeasible for the class members to seek redress individually. Consumers falling victim to statutory

violations in the context of vehicle repossessions seldom have the financial means to pursue their claims and, in most cases, cannot find an attorney to represent them on a contingent basis for their stand-alone claims.

49. The prosecution of separate actions by the individual class members, were that even possible, would create the risk of inconsistent or varying adjudications with respect to individual class members against the Defendant and would establish incompatible standards of conduct for the Defendant.

## COUNT I
### Statutory Damages under 13 Pa.C.S.A. § 9625(e)(5)
### On Behalf of the Class for Violation of
### 13 Pa.C.S.A. §§ 9610 and 9616 and 12 Pa.C.S.A. § 6261(d)

50. The preceding paragraphs are incorporated by reference.

51. The claims in this Count I are alleged on behalf of the Plaintiff and all members of the above-defined Class of putative plaintiffs (collectively, the "*Plaintiffs*").

52. The Defendant sent Disposition Notices to the Plaintiffs that failed to comply with the provisions of section 9616 of the UCC as detailed, *supra*.

53. The Defendant's failure to comply with the provisions of the UCC was part of a pattern and/or consistent with its practice of noncompliance as detailed, *supra*.

54. Accordingly, each of the Plaintiffs is entitled to recover statutory from the Defendant in accordance with the formula set out in section 9625(c)(2) of the UCC. 13 Pa. C.S. § 9625(c)(2) ("an amount not less than the credit service charge plus 10% of the principal amount of the obligation.").

55. In addition to the Plaintiffs' entitlement to recover statutory damages under section 9625(c)(2), each of the Plaintiffs is entitled to recover further statutory damages in the amount of $500, because the Defendant's noncompliance with the requirement that it send statutorily-

compliant explanations of a deficiency/surplus was part of a pattern or consistent with a practice of noncompliance. 13 Pa. C.S. § 9625(e)(5).

56. The Plaintiffs are also entitled to injunctive relief, in view of the Defendant's failure to comply with the dictates of Article 9. 13 Pa. C.S. § 9625(a)

## **REQUEST FOR RELIEF**

WHEREFORE, the Plaintiff requests that this Court enter an Order:

(i) Certifying this case as a class action and certifying the proposed class, together with its subclasses and designating the Plaintiffs as the representatives of the class and the undersigned as counsel to that class;

(ii) Finding that the Defendant's actions complained of herein are unlawful;

(iii) Preliminarily and permanently enjoining the Defendant from (a) engaging in the practices challenged herein; and (b) seeking to collect any alleged deficiency balances from any class member that allegedly arose out of the Defendant's disposition of a class member's vehicle;

(iv) Declaring any deficiency balances allegedly owed by any class member arising out of the Defendant's disposition of a class member's vehicle to be deemed waived;

(v) Directing the Defendant to remove any adverse credit reporting which the Defendant reported in connection with its efforts to collect any deficiency balances from any class member that allegedly arose out of the Defendant's disposition of a class member's vehicle;

(vi) Awarding statutory damages in accordance with the statutory formula of provided in 13 Pa. C.S. § 9625(c)(2);

(vii) Awarding additional statutory damages to each class member in the amount of $500, because the Defendant's noncompliance was part of a pattern or consistent with a practice of noncompliance. 13 Pa. C.S. § 9625(e)(5)

(viii) Awarding pre-judgment and post-judgment interest to the extent permitted by law;

(ix) Awarding legal fees and expenses incurred by the class counsel in the investigation and prosecution of this action; and

(x)     Granting such other relief as the Court deems appropriate under the circumstances.

## JURY DEMAND

The Plaintiff demands a trial by jury as to all issues so triable.

Dated: September 9, 2024

Respectfully submitted,

/s/ Aurelius P. Robleto
Aurelius P. Robleto
PA I.D. No. 94633
Renee M. Kuruce
PA I.D. No. 314691
ROBLETO KURUCE, PLLC
3706 Butler Street
Pittsburgh, PA 15201
Telephone: (412) 925-8194
apr@robletolaw.com
rmk@robletolaw.com

*Counsel for the Representative Plaintiff and the Putative Class*