IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELISSA S. GRANT, | ) |
|        Representative Plaintiff, | ) 2:24-cv-1281 |
| vs. | ) |
| CAPITAL ONE AUTO FINANCE, INC., a division of CAPITAL ONE, NATIONAL ASSOCIATION, | ) |
|        Defendant. | ) |

## MEMORANDUM ORDER

### J. Nicholas Ranjan, United States District Judge

This case is a putative class action in which the named Plaintiff, Melissa Grant, alleges that Defendant Capital One Auto Finance, Inc. violated Pennsylvania consumer disclosure law—specifically, 13 Pa. C.S.A. § 9616, which is part of Pennsylvania's UCC Article 9. Because the Court concludes that the deficiency notice at issue substantially complies with the statute, Ms. Grant cannot state a claim. So the Court will dismiss her complaint with prejudice.

### BACKGROUND

On April 13, 2015, Melissa Grant purchased a 2015 Dodge Charger from Monroeville Dodge in Monroeville, Pennsylvania. ECF 1, ¶ 8. Ms. Grant entered into a retail purchase agreement and a financing agreement with Monroeville Dodge. *Id.* at ¶¶ 9-10. Ms. Grant also purchased a service contract for $2,000. *Id.* at ¶ 31; ECF 1-1, p. 1. Monroeville Dodge assigned the financing agreement to Capital One Auto Finance, which then became the creditor and secured party to that agreement. ECF 1, ¶¶ 12-13.

In July 2020, Capital One repossessed Ms. Grant's Charger, claiming a default, and on July 16, 2020, Capital One issued a notice of its plan to sell the Charger and

a notice of repossession and notice of right to reinstate or redeem. *Id.* at ¶¶ 22-23. On September 24, 2020, Capital One sent a disposition notice "to supply an explanation for how [Capital One] calculated [Ms. Grant's] alleged deficiency balance." *Id.* at ¶ 24. Ms. Grant alleges that the disposition notice does not comply with the requirements of the Pennsylvania UCC, and this forms the basis for her claim in this case. *Id.* at ¶ 25.

Based on the alleged deficiencies with the disposition notice (discussed below), Ms. Grant brings one count for statutory damages under 13 Pa. C.S.A. § 9625(e)(5), and seeks to certify a class to join her.

Capital One now moves to dismiss, arguing that its notice complied with the statute. ECF 8. The motion is now fully briefed and ready for disposition. ECF 9; ECF 13; ECF 14.

## DISCUSSION & ANALYSIS

This case turns entirely on a reading of the statutory language. Typically, that means applying the plain text of the statute. But, here, interestingly enough, the text teaches that it's the purpose of the statute that controls in the end.

That is, at a high level, the statute requires a secured creditor to disclose an "explanation" of a "deficiency" after the default on the loan and sale of the collateral. 13 Pa. C.S.A § 9616(b). The explanation must be very specific—six categories of information; and, in fact, the statute says that the information has to be in a very specific order. *Id.* at § 9616(c).

But then after saying all of that, the statute ends up being quite forgiving, by providing what one might call a "safe harbor." It says an explanation "complying substantially" with the statute is "sufficient," even if it includes "minor errors which are not seriously misleading." *Id.* at § 9616(d).

There is no question that the Capital One notice here didn't comply with the literal terms of the statute. So the question here is whether what Capital One did

provide to Ms. Grant was "substantially compliant." The Court concludes that it was.

To begin with, what is "substantial compliance"? The statute doesn't say. But it does provide a few clues. The safe-harbor provision states: "**(d) Substantial compliance**.--A particular phrasing of the explanation is not required. An explanation complying substantially with the requirements of subsection (a) is sufficient even if it includes minor errors which are not seriously misleading." *Id.*

From the first sentence, it is clear that an explanation that simply has different phrasing that than contemplated by the statute can still be substantially compliant. From the second sentence, it is clear that an explanation that otherwise substantially complies but has "minor errors which are not seriously misleading" is also acceptable; in other words, the existence of errors in an explanation will not be disqualifying, so long as the statement substantially complies, the errors are only minor, and they are not seriously misleading.

Beyond these clues, the law provides a general and well-settled understanding of substantial compliance. Whether it is dealing with adherence to a contract or to a statutory requirement, substantial compliance means that a party has satisfied the essential purpose of the transaction or the law at issue. This doctrine of substantial compliance is often applied to prevent harsh penalties when a party has made a reasonable and good-faith effort to comply with a contractual term or a statutory obligation. *See, e.g., Sargo, II, Inc. v. City of Phila.*, 488 F. Supp. 1045, 1053 (E.D. Pa. 1980) (stating that a landlord plaintiff "substantially complied" with a notice provision in a Pennsylvania statute requiring the landlord to send notice of a sale to a tenant because there was "no assertion that tenants failed to actually receive the notice or were prejudiced by this omission"); *Denlinger, Inc. v. Agresta*, 714 A.2d 1048, 1053 (Pa. Super. Ct. 1998) (discussing the doctrine of substantial compliance in the context of Pennsylvania's Mechanics' Lien Law: "Under the construction rules

pertaining to the Mechanics' Lien Law, tempered by the doctrine of substantial compliance, we hold that appellant sufficiently satisfied the requirements of the statute; *i.e.*, enough appears in appellant's mechanics' lien claim to point the way to successful inquiry"); *Tesauro v. Baird*, 335 A.2d 792, 793-94 (Pa. Super. Ct. 1975) (discussing the doctrine of substantial compliance in these terms, in a different statutory context: "But all the cases agree that a substantial compliance is sufficient, and this is shown to exist wherever enough appears, on the face of the statement, to point the way to successful inquiry" (cleaned up)).[1]

Based on all of this, the Court finds that the following inquiries are helpful in determining substantial compliance:

1) What is the purpose of (or informational goals behind) the statute?

2) Was the statute's purpose met with respect to what was disclosed?

3) Was there any bad faith from the defendant (*e.g.*, seriously misleading information)?

4) Were any errors in the content of the information or the form itself "minor" (*i.e.*, harmless, non-prejudicial to the plaintiff, or *de minimis*)?

Answering these questions here in the context of this case leads to the conclusion that Capital One's explanation substantially complied with the statute.

### *What is the purpose of the statute?*

The statute at issue is 13 Pa. C.S.A. § 9616, and it is within Article 9 of the Pennsylvania UCC, which concerns secured transactions. It is more specifically within Chapter 96, which concerns default. The prior sections in Chapter 96 walk

---

[1] Similarly, embedded within Article 9 of the UCC is the related concept of "commercial reasonableness," which embodies good faith and pragmatism. *See, e.g.*, *Chrysler Credit Corp. v. B.J.M., Jr., Inc.*, 834 F. Supp. 813, 833 (E.D. Pa. 1993) (describing commercial reasonableness generally); *In re Auer*, 103 B.R. 700, 703 (Bankr. W.D. Pa. 1989) (Markovitz, B.J.) ("Sale of the collateral in accordance with [the Pennsylvania] Uniform Commercial Code is 'commercially reasonable' if the seller acts in good faith, avoids loss, and makes effective realization.").

through the procedures, rights, and remedies when a secured party repossesses and sells the collateral due to a default. 13 Pa. C.S.A. §§ 9601-15. After that, Section 9616 kicks in, and requires the secured party to send the explanation, which explains how much the consumer still owes (or, sometimes, could be owed).

The text of 13 Pa. C.S.A. § 9616(b) provides: "[i]n a consumer-goods transaction in which the debtor is entitled to a surplus or a consumer obligor is liable for a deficiency[,]" if the secured party choses to send an explanation to the debtor, the explanation must include, "in the following order:

    (1) The aggregate amount of obligations secured by the security interest under which the disposition was made and, if the amount reflects a rebate of unearned interest or credit service charge, an indication of that fact, calculated as of a specified date . . .

    (2) The amount of proceeds of the disposition.

    (3) The aggregate amount of the obligations after deducting the amount of proceeds.

    (4) The amount, in the aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing and disposing of the collateral and attorney fees secured by the collateral which are known to the secured party and relate to the current disposition.

    (5) The amount, in the aggregate or by type and types of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled and which are not reflected in the amount in paragraph (1).

    (6) The amount of the surplus or deficiency."

13 Pa. C.S.A. § 9616(c).

The comment to UCC § 9-616, on which the Pennsylvania statute is based, states that "[t]his section reflects the view that, in every consumer-goods transaction, the debtor or obligor is entitled to know the amount of a surplus or deficiency and the

basis upon which the surplus or deficiency was calculated." U.C.C. § 9-616, cmt. 2.

Some commentators have suggested that the reason this is important and why this statute was passed (as part of the UCC's 2001 amendments) is that there was a time when creditors withheld surpluses or overstated deficiencies, and thus the statute is aimed at consumer protection. *See* Carolyn L. Carter et al., *National Consumer Law Center*, *Repossessions*, § 11.2.1 (11th ed. 2025).

Based on all of this, the purpose or informational goals of the statute are rather obvious. This statute is designed to spell out how much the collateral was sold for, what additional expenses, interest, or credits are included, and what is still owed (and by whom).

Further, this information is particularly important because it can inform many other decisions by the consumer, including whether to challenge the commercial reasonableness of the sale, whether to pay or not pay the debt, and whether to declare bankruptcy, as well as having an impact on later potential deficiency proceedings. *See id.* at § 13.2.1 (discussing remedies).

### *Was the statute's purpose met with respect to what was disclosed?*

Here, Capital One provided Ms. Grant with an explanation in the following form:

> If you are entitled to the protections of the United States Bankruptcy Code (11 U.S.C. §§ 362 & 524) regarding the subject matter of this letter, the following applies to you: THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT, ASSESS, OR RECOVER A CLAIM IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY.
>
> Dear MELISSA S GRANT,
>
> Capital One Auto Finance is the owner and holder of the above referenced account. Under the terms of the Retail Installment Contract and Security Agreement for the account, and pursuant to applicable law, Capital One Auto Finance sold the collateral (vehicle) pledged to secure the indebtedness for the sum of $14,400.00. After applying the net proceeds from the sale, along with any applicable refunds, as required by the terms and conditions of the loan contract, a deficiency balance remains, in the amount of $1,602.66, for which you remain liable under your agreement.
>
> The deficiency balance was calculated as follows:
>
> | | | |
> |---|---|---|
> | Loan Balance as of Repo Date 07/13/20 | | $15,793.67 |
> | Proceeds From Sale of Collateral | ( = ) | $14,400.00 |
> | Costs Associated with Repossessing Vehicle | ( + ) | $495.00 |
> | Sales Cost | ( + ) | $55.00 |
> | Transportation | ( + ) | $250.00 |
> | Vehicle Inspection | ( + ) | $50.00 |
> | Cost of Reconditioning | ( + ) | $29.00 |
> | Goodwill Waiver of Unpaid Interest | ( - ) | $187.85 |
> | Goodwill Waiver of Costs Associated with Repossessing Vehicle | ( - ) | $495.00 |
> | Account Adjustments** | ( + ) | $12.84 |
> | The Amount of the Deficiency as of 09/24/20 | = | $1,602.66 |
>
> **These may include the following adjustments made post repossession: accrued interest, payments, returned payments, late payment fees, and/or insufficient fund fees.
>
> Future expenses, charges, additional interest, credits and refunds of Insurance Premiums, Service Contract, and/or GAP may affect the amount of the deficiency/surplus. The deficiency balance referenced above is due in full. Your immediate attention is requested. Please remit payment of the full deficiency balance to:
>
> Capital One Auto Finance
> P.O. Box 261930
> Plano, TX 75026-1930
>
> This communication is from a debt collector and is an attempt to collect a debt; any information obtained will be used for that purpose.

ECF 1-2, p. 1. Ms. Grant claims that there are errors in this explanation, but what is clear is that the informational goals or purpose of the statute are met. The collateral disposition, loan balance, expenses, and ultimate deficiency are spelled out in a very discernible format.

Ms. Grant alleges that Capital One failed to disclose the most important thing: the amount of the surplus or deficiency. But this argument is a red herring. She contends that the amount isn't truly disclosed because the explanation includes a

statement that "refunds of Insurance Premiums, Service Contract, and/or GAP may affect the amount of the deficiency/surplus." ECF 1, ¶ 32 (quoting ECF 1-2, p. 1). However, section 9616(a)(3) expressly states that an explanation may include a statement, "if applicable, that future debits, credits, charges, including additional credit service charges or interest, rebates and expenses may affect the amount of the surplus or deficiency," which is exactly what Capital One did here. 13 Pa. C.S.A § 9616(a)(3). This doesn't violate the statute or undermine its informational goals.

*Was there any bad faith from the defendant (e.g., seriously misleading information)?*

Ms. Grant points to problems with the notice, but the Court cannot discern how any of them mislead (let alone "seriously"), or are at odds with the essential information that she needed.

For example, Ms. Grant alleges that Capital One failed to include "the aggregate amount of the obligations after deducting the amount of proceeds" pursuant to section 9616(c)(3). ECF 1, ¶ 28. But Capital One rightly argues that "[t]his amount is readily discernible from the face of the Disposition Notice" despite not being expressly set forth, and thus is not seriously misleading. ECF 9, p. 11. That is, the omission of a line item for the aggregate amount of the obligations after deducting the amount of proceeds is not seriously misleading because the amount can be calculated easily by just subtracting the second line item from the first line item, thus falling under substantial compliance. In fact, by separating the two items out, the explanation becomes clearer to understand.

Ms. Grant also alleges that Capital One "failed to comply with the requirement that it disclose the aggregate amount of the obligations secured the security interest pursuant to which the disposition was made" under 13 Pa. C.S.A § 9616(c)(1). ECF 1, ¶ 29. This is incorrect, as shown by a review of the explanation—the first line item lists the loan balance as of the date of repossession. ECF 1-2, p. 1. Ms. Grant seems

to argue that the "account adjustments" line item should have been included in the first line item, (ECF 13, p. 8), but even if that is correct, this alleged error is not seriously misleading because the "account adjustments" line item is clearly set forth and the amount of the remaining deficiency is the same regardless of whether it is incorporated into the first line item or is a separate line item.

***Were any errors in the content of the information or the form itself "minor" (i.e., harmless, non-prejudicial to the plaintiff, or de minimis)?***

Ms. Grant points to two more alleged errors, but they are harmless.

Ms. Grant alleges that Capital One failed to include the enumerated requirements in the correct order under Section 9616(c). ECF 1, ¶ 30. This is a bit of a variation on some of her arguments (*i.e.*, the separating out of items 1 and 2). But however one looks at it, Capital One included all of the requirements in mostly the correct order—the loan balance as of the repossession date (first line item), the amount of proceeds from the disposition (second line item), expenses (line items three through seven), credits (line items eight and nine), and the amount of the surplus or deficiency (line item eleven). 13 Pa. C.S.A § 9616(c); ECF 1-2, p. 1. Capital One's inclusion of an "account adjustments" line item in line ten is an extra line item not required in the statute. *See* 13 Pa. C.S.A § 9616(c). But if that creates an ordering mistake, it is harmless.

Ms. Grant also argues that the explanation is deficient because Capital One did not include a credit for the unused portion of her service contract. ECF 1, ¶ 31. This argument might have some legs if there were a notable credit, but the complaint doesn't say. Importantly, Ms. Grant doesn't allege that there was an unused portion of the service contract (and Capital One argues that there wasn't). True, Ms. Grant attaches the purchase agreement that shows she purchased a service contract for $2,000 (ECF 1-1, p. 1), but she does not allege whether there was an unused portion of the service contract, let alone the specific monetary amount to which she would

-9-

have been entitled.  Thus, she hasn't pled plausible facts supporting this theory.

In sum, the Capital One explanation substantially complied with the statute; it provided Ms. Grant essential information from the statute in a discernible way.  As such, there is no claim here, and the Court will grant Capital One's motion to dismiss.  Further, because the Court finds amendment would be futile or inequitable, the dismissal will be with prejudice.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (leave to amend need not be granted if an amendment "would be inequitable or futile"); *Southersby Dev. Corp. v. Borough of Jefferson Hills*, No. 09-208, 2011 WL 13364574, at *2 n.1 (W.D. Pa. July 29, 2011) (Kelly, M.J.) ("Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss.").[2]

## CONCLUSION

Pursuant to the above, the Court hereby **ORDERS** that Capital One's motion to dismiss (ECF 8) is **GRANTED**.  Ms. Grant's complaint (ECF 1) is **DISMISSED** with prejudice.  The Clerk of Court shall mark this case as **CLOSED**.

DATE:  August 13th, 2025                                BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

---

[2] Under the Court's practices and procedures, the parties met and conferred upon the filing of the motion to dismiss, so Ms. Grant has the ability to amend during that conferral process, and she didn't. https://www.pawd.uscourts.gov/sites/pawd/files/Ranjan_Practices_Procedures_4_25.pdf.  But even then, once she saw Capital One's brief in support, she could have amended as of right in response, but she didn't.  Fed. R. Civ. P. 15(a)(1)(B) (a party may amend a pleading as a matter of course after service of a motion under Rule 12(b)).  Finally, as part of the briefing on the motion, Ms. Grant did not request amendment or even suggest that she could amend to provide more detail in response to Capital One's arguments.  For these reasons, leave to amend would be futile and the dismissal will be with prejudice.